Dutton vs. Fowler. .

---

DUTTON vs. FOWLER.

CONSTITUTIONAL LAW : *Act awarding the whole sum recovered in a penal action, to complainant, invalid. Sec. 2, Art. X, Constitution of Wisconsin. Ch. 16, Laws of 1866.*

1. Ch. 16, Laws of 1866, declares that if the owner of any sheep infected with the disease known as "foot rot," shall permit them to be driven along any public road, or to go at large out of his enclosure, he shall forfeit a certain sum, the whole of which may be recovered in an action by the person who shall enter complaint, etc. *Held,* that the act is in violation of sec. 2, art. 10 of the state constitution, which sets apart for the school fund "the clear proceeds of all fines collected in the several counties for any breach of the penal laws;" and no action can be maintained under it.

2. Whether such an action would not lie if the statute awarded only *part* of the penalty to the complainant, *quære.*

3. The case distinguished from *Stone v. Lannon,* 6 Wis. 497, where the statute gave an action for a prescribed penalty as *compensation or damages to the party injured.*

APPEAL from the Circuit Court for *Kenosha* County.

The defendant appeals from an order overruling his demurrer to the complaint. The nature of the complaint will appear from the opinion.

*Webster & Lovell,* for appellant.

*Head & Quarles,* for respondent, argued that it was not the intention of the people in adopting sec. 2, art. X of the state constitution, to make any innovation upon the operation of the penal laws, or sweep away one of the auxiliaries of the penal code which is as old as the common law; that the expression " clear proceeds" indicates that at least some portion of the penalty was to be absorbed before the remainder should be due to the school fund; that it does not follow, because the *clear proceeds* of all fines are awarded to that fund, that no fine can be imposed which shall not leave any revenue for that fund; that it is only the moneys which remain after such disposition of the fine has been made as the legislature may deem necessary to secure the proper enforcement of the penal laws, which are affected by this section. 2. Sec. 7, ch. 175, Laws of 1860, assumes to alienate from the school fund the whole of a fine thereby imposed, and that section has been held constitutional by this court. *Carter v. Dow,* 16 Wis. 302; *Tenney v. Lenz,* id. 566; *State v. Ives* and *State v. Goodrich,* 15 id. 445; *Ives v. Supervisors,* 18 id. 168. 3. In the revised statutes of 1858 there are twenty-seven provisions which create penalties and divert the entire proceeds from the school fund. Numerous instances of the same kind occur in the revision of 1849, adopted soon after the constitution itself. For more than twenty years the legislature, the courts and the bar have acquiesced in the construction thus put upon this constitutional provision. See especially, *Stone v. Lannon,* 6 Wis. 497, in which the opinion was by Chief Justice WHITON, who was a member of the convention that framed the constitution. Under the circumstances the argument *ab inconvenienti* should

control. *Stewart v. Laird*, 1 Cranch, 95; *Rogers v. Goodwin*, 2 Mass. 475; *Johnson v. R. R.*, 23 Ill. 207. As to effect given to a practical or contemporaneous construction of statutes, see *McKean v. De Lancy's Lessee*, 5 Cranch, 32; *Jackson v. Gumaer*, 2 Cow. 567.

COLE J. This action is brought under chap. 16, Laws of 1866, to recover the penalty imposed by that act for permitting sheep infected with disease known as "foot rot" to be driven along a public road off the premises of the owner, or to go at large out of his enclosure. That law substantially enacts, that if the owner of any sheep thus diseased shall suffer or permit them to be driven along any public road, or to go at large out of his enclosure, such person shall forfeit the sum of ten dollars for each and every such sheep, and for each time any one of such diseased sheep shall be driven or permitted to be so driven, or shall be so found at large with the knowledge or consent of the owner thereof; which forfeiture, the law provides, may be recovered in an action by the person who shall enter complaint in the proper court of the county where the offense shall have been committed. The complaint was demurred to, on the ground that it appears from the face thereof that the facts stated are not sufficient to constitute a cause of action. The demurrer was overruled.

The principal and most serious objection taken to the complaint is, that so much of the statute above cited as prescribes that the sum named as a penalty for violating its provisions shall be forfeited to and be recovered by the person who shall enter the complaint, is in conflict with the constitution, and therefore void. Section 2, art. 10 of the constitution declares what shall constitute the school fund of the state, and among other sources of revenue designates and sets apart to that fund "all moneys and the clear proceeds of all property that may accrue to the state

by forfeiture or escheat, *and the clear proceeds of all fines collected in the several counties for any breach of the penal laws.*"

It is claimed that the law in question is penal in its character; that the penalty imposed for a violation of its provisions is in the nature of a fine or pecuniary punishment; and that as the entire penalty is given to the person who shall enter the complaint, no part being paid into the state treasury for the benefit of the school fund, as the above provision of the constitution requires, this part of the law at least must fail. It appears to us that this objection is well taken, and is insuperable. Indeed, it is difficult to imagine how the law can be sustained, if due and proper effect is given to the language used in the constitution. For that clearly and expressly devotes to a permanent fund for the support of common schools and educational purposes, the "clear proceeds of all fines collected for any breach of the penal laws." The language is plain, positive and comprehensive, and there is nothing which in the least degree tends to restrict its meaning.

In the law before us, the entire penalty is given to the person who shall enter the complaint, and no part whatever goes to the school fund. Whether the law could be sustained, if a part of the penalty or forfeiture recovered was given to the school fund and the other part to the informer or prosecutor, is a question which, of course, cannot arise upon this enactment. For the entire penalty is given the informer; consequently there are no "clear proceeds" for the school fund. There is no residuary fund to be applied to the objects of education, and this source of revenue is lost to the state.

It is claimed by the counsel for the plaintiff, that the people, in adopting the constitution, could not have intended or supposed that the effect of this provision was to hamper the legislature in the disposition

of the penalties inflicted for a violation of law.   It is quite apparent, however, that the legislature has not unlimited discretion to dispose of such penalties as it may think proper.   The " clear proceeds," whatever they may be, must go to the school fund, and the entire penalty cannot be given to the informer.   Whether the legislature can give what is known as a *qui tam* action, we need not inquire.   It is true, at the last term we had before us the case of *Lynch v. The Steamer Economy* [*ante*, p. 69], where an action was brought to recover the penalty given by chapter 59, Laws of 1861, for navigating the Fox river with a steam propeller without the boat being provided with a sufficient spark-catcher.   There the law gave one-half of the penalty to the informer, and the other half was given to the use of the county within which the offense was committed; that provision of the law giving one-half of the penalty to the county was held invalid, and the action was sustained only upon the ground that this portion should go to the school fund, and that the court would be authorized to make that disposition of a part of the amount of penalty recovered.   It was assumed in the case, rather than decided, that the language used in this clause of the section, " clear proceeds," etc., did leave the legislature some discretion in the matter, and that a part of the penalty might be awarded to a person who assumed the responsibility of bringing a suit to enforce the statute, and who was liable for costs if the action failed.   But whether it was competent for the legislature to enact a law of this character was a question not even raised upon the argument, and therefore but little consideration was given to it in disposing of the case.   But it is very manifest that the present law is quite distinguishable from the one before us in that case.   It might well be that the legislature could give the prosecutor a part of the penalty as a pecuniary inducement to bring an action, while a part should be reserved for the use of the

school fund. 'But however this may be, upon the law before us, which gives the entire penalty to the prosecutor, no reasonable doubt can exist, if the language of the constitution means anything.

The counsel for the plaintiff claims that this court has already passed upon the constitutionality of a provision which was subject to the same objection as the act before us. He was constrained to admit that this question was not raised in the discussion of the cases to which he referred—was not examined and considered by the court—and therefore, we may add, cannot be said to be decided. It would be a dangerous doctrine to hold that every question which might by possibility be raised in a case was necessarily decided, even when it appeared that it escaped the attention of both counsel and the court. We do not, therefore, regard the decisions upon the " act to regulate and license the keeping of dogs" as controlling upon the case before us.

The same counsel likewise referred us to a number of statutes which impose penalties for certain unlawful acts or omissions of duty, where the entire proceeds are diverted from the school fund. But what is the proper inference from such legislation ? That the law before us is valid, or that the legislature has heretofore enacted laws in conflict with the constitution ? There is a class of statutes which give an action for a prescribed penalty, manifestly as damages or compensation to a party injured. A number of statutory provisions of this character were cited. We should have no difficulty in sustaining such laws. The case of *Stone v. Lannon*, 6 Wis. 497, was obviously brought under a provision of this kind. But they are quite different from the provision before us. It is not alleged that the plaintiff has sustained any damage or injury by reason of the defendant violating this statute. Here a penalty is imposed for permitting or suffering certain things to be done, and the penalty is given to whoso-

ever will sue for it.   For the reasons above given we think the law invalid.

It follows from these views that the order of the circuit court must be reversed, and the cause be remanded with directions to dismiss the complaint.

*By the Court.*—It is so ordered.

LYON, J., took no part in the decision of this appeal, having presided at the circuit when the cause was tried.